UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Kenneth Nichols | : | PRISONER |
| | | 3:03CV0879(JBA) |
| v. | : | |
| Dr. E. Pesanti, et al | : | August 26, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendants in the above-captioned matter move for summary judgment in their favor. The plaintiff cannot establish a sufficient cause of action to go to the jury, and judgment should enter in the defendants' favor.

**I. FACTS:**

The plaintiff alleges that the defendants exhibited deliberate indifference to his medical needs, specifically, an inguinal hernia. The defendants do not dispute that the plaintiff did not receive surgery when he initially noted his condition to medical staff. The defendants maintain that the surgery to correct the plaintiff's hernia was not immediately necessary, was always elective, and was performed in abundant time to preclude any pain or injury.

The plaintiff has sued Dr. Edward Pesanti, Dr. O. Pillai, Dr. Carson Wright, Nurse Patricia Wollenhaupt, and Pamela Shea. The complaint contains specific allegations regarding medical care rendered by Drs. Pillai and Wright. The complaint contains no allegations as to Dr. Pesanti other than to allege that he "formulated, promulgated and/or enforced a policy, procedure or practice under which the constitutional rights of the plaintiff were violated." Comp. ¶ 24. The only allegations against Nurse Wollenhaupt and Pamela Shea are that they informed him that other persons had decided that surgery to repair his hernia was not immediately necessary.

Comp. ¶¶ 17-19.  The plaintiff has not claimed that Dr. Pesanti ever knew of his individual situation.  He does not claim that defendants Wollenhaupt or Shea were in a position of authority with regard to medical decisions related to his hernia.

The defendants Pesanti, Wollenhaupt and Shea move for summary judgment in their favor on the basis of lack of personal involvement.  All defendants move for summary judgment as the plaintiff's situation did not rise to a serious medical need, and no defendant ever exhibited deliberate indifference towards him.

The plaintiff was incarcerated from September of 1994 until October of 1999.  **Ex. A RT 60.**  He was not in custody from October of 1999 until August 30, 2000. **Ex. A RT 60.**  He was at Northern Correctional Institution (hereinafter "Northern") from September 2000 until March of 2002, and is still incarcerated.  **Ex. A  RT 60.**

On March 6, 2001, the plaintiff was seen by an A.P.R.N. at Northern.  **Ex. B Medical Records 251; Ex. C, Dr. Blanchette Affidavit.**  On this date, the reason for plaintiff's visit was to be followed for ulcers in his mouth.  **Ex. B Medical Records p. 250-51; Ex. C.**  During that visit, the plaintiff also indicated that he had a hernia in his left groin that had been there for about 10 years.  **Medical Records p. 251; Ex. C.**

On this date, the plaintiff complained that the hernia was painful. **Ex. B Medical Records p. 251; Ex. C.**  When evaluated for objective, however, the A.P.R.N. noted the following: "On inspection mass present … L [left] groin over L scrotum.  Does not descend on cough, nor on repetition X 3 [three times].  Able to walk, get in & out of chair c-out [without] noted discomfort." **Ex. B Medical Records p. 251; Ex. C .**

The A.P.R.N.'s assessment was "Hernia, not incarcerated." **Ex. B Medical Records 251; Ex. C.** The A.P.R.N.'s plan for the patient was to refer him to Dr. Pillai for evaluation. **Ex. B p. Medical Records 251; Ex. C.** The care the plaintiff received on this date was well within the standard of care given the plaintiff's symptoms. Within four days of his visit with the A.P.R.N., the plaintiff was seen by Dr. Pillai. **Ex. B Medical Records 251; Ex. C.** On April 10, 2001, the plaintiff did not complain of pain, but informed the doctor that he had "occasional constipation" with the hernia, which he had had for ten years. **Ex. B Medical Records 251; Ex. C.**

Dr. Pillai noted that on examination the hernia was reducible. **Ex. B Medical Records 251; Ex. C.** The doctor's plan for the patient at this time was "Reassurance, truss, colace, re-evaluate … 6 months." **Ex. B Medical Records 251; Ex. C.** The truss was appropriate in order to prevent the hernia from increasing. The colace was appropriate to relieve any diarrhea. An evaluation within 6 months was well within the standard of care given the plaintiff's symptoms. **Ex. C**.

The plaintiff alleges in his complaint that on May 21, 2001, Correctional Head Nurse Wollenhaupt informed him that hernia surgery was an elective procedure. While this communication is not found in the medical records, any such communication is accurate and entirely consistent with the applicable standard of care. **Ex. C**. In the attachment to plaintiff's complaint, the correspondence from Wollenhaupt states:

> According to your record you have had this hernia for ten years. As explained to you this is an elective procedure. You were assessed by the APRN and physician and both feel there is no problem with you hernia. The risks of surgery at this point outweigh the benefits.

Complaint attachment.

The plaintiff further alleges that he sent a letter to Pamela Shea on June 8, 2001, seeking surgery to repair his hernia. Ms. Shea is alleged to have informed the plaintiff on June 19, 2001, that he would be re-evaluated in 6 months, or sooner if his condition changed. Any such communication is entirely consistent with the applicable standard of care. **Ex. C**.

On June 25, 2001, the next month, Dr. Wright saw the plaintiff regarding his hernia. Dr. Wright's note stated, in pertinent part:

> S [Symptoms]: PT [patient] 35 yo [year old] presents with Hx [history] of Inguinal with bulged [sic] . This he says is painful occasionally**. PT says he doesn't have mass at this time.** Everything is OK.
> O [Objective]: Normal male genitalia. …No lesion or bulge palpated.
> A [Assessment]:    R/O [Rule-out] hernia groin L.
> P [Plan]:    PTR [patient to return] 2 wks. PT says occasionally mass comes through and he pushes up. Isn't wearing supportive gear. No lifting wts.

**Medical Records 250 (emphasis added) ; Ex. C.**

Dr. Wright's care on June 25, 2001 was entirely within the standard of care given the plaintiff's symptoms. **Ex. C**. The plaintiff had no palpable hernia at this time and was experiencing no pain at this time. The plaintiff was not wearing the truss Dr. Pillai had prescribed. He was advised not to lift weights. Dr. Wright again saw the plaintiff on July 14, 2001, less than a month later. At this time, Dr. Wright noted:

> PT not complaining of any herniated lesion. Will follow up any complaints.
> During exam didn't feel any lesion.

**Medical Records 249; Ex. C.**

The plaintiff did not seek an appointment with medical staff about his hernia for the remainder of the time he spent at Northern, that is, for the next eight months through March 22, 2002. **Medical Records; Ex. C.** The plaintiff did have numerous medical appointments between July 14, 2001 and March of 2002 that were completely unrelated to his hernia, at least 7 of them.

**Medical Records; Ex. C**. The plaintiff did not raise the issue of his hernia at any of these appointments. **Medical Records; Ex. C**.

When the plaintiff was medically cleared to be transferred from Northern to MacDougall-Walker Correctional Institution (hereinafter "Mc-DW"), he raised health concerns completely unrelated to his hernia. **Medical Records 243; Ex. C.** He did not raise the hernia as an issue. **Medical Records 243; Ex. C.** Medical staff at Mc-DW saw the plaintiff the day after his transfer, on March 23, 2002. **Medical Records 242; Ex. C.** At this time, the plaintiff did not raise the hernia as an issue. **Medical Records 242; Ex. C.**

The next entry in the plaintiff's medical records regarding the hernia is dated April 18, 2002 and is made by Dr. Silvis:

> S:   Comes down at Request of Asst. Atty. General—L Ing. Hernia/ since at least 2000.
> O:   Truss given and did not fit.
> ABD [abdomen] = soft, + [positive] BS [bowel sounds], L inguinal hernia
> A:    …L inguinal hernia. Hernia (direct) Patient not aware of and chart does not show surgical repair. >>> URC referral to surgery. Also new order for Truss-larger size.

**Medical Records 60; see also 25; Ex. C.**

Prior to this note, there is no indication that the plaintiff ever complained that the truss given him previously did not fit. On April 18, 2002, Dr. Silvis completed a URC request for surgery. **Medical Records 9; Ex. C.** His URC request was denied. **Medical Records 8; Ex. C.** URC's denial of the request for surgery was consistent with the standard of care, and did not constitute deliberate indifference. On May 15, 2002, URC amended its response, approving a surgical consult at UCONN. **Medical Records 7; Ex. C.** On May 21, 2002, an outside surgeon approved the plaintiff for surgical repair, noting that the hernia was still "reducible." **Medical Records 4; Ex. C.** Surgery to repair the hernia was conducted on July 9, 2002. **Medical**

5

**Records 28; Ex. C.** The patient was seen for appropriate follow-up care and the surgical wound healed well. **Medical Records 67, 66, 65; Ex. C.**

An inguinal hernia results from the abnormal passage of an internal abdominal organ or structure, typically an intestine, through the inguinal canal. In men, this results in a bulge in the scrotum. **Ex. C**. The bulge can vary in size, being very small or as big as a grapefruit. Inguinal hernias are quite common. Reducible inguinal hernias generally do not impact an individual's daily activities. **Ex. C**. If the bulge caused by a hernia can be returned to its normal location by manipulation, the hernia is considered to be a reducible hernia. **Ex. C**. An easily reducible inguinal hernia such as the plaintiff experienced is not a medical emergency. An incarcerated bulge which cannot be returned to its normal location is considered a medical emergency. At no time did the plaintiff experience an incarcerated hernia. **Ex. C**.

Surgery to repair such a reducible inguinal hernia is considered elective. **Ex. C**. Patients in or out of a correctional facility can go for several years without corrective surgery and suffer no pain and no ill effects. **Ex. C**. Based on my training and experience as a doctor, having treated or overseen the treatment of dozens of patients with inguinal hernias, and based upon my review of the plaintiff's medical records, any claim the plaintiff in this case is making that he suffered pain from his hernia is not credible. **Ex. C**.

There was nothing about the care provided to the plaintiff for his hernia while in the custody of the Connecticut Department of Correction which rises to the level of deliberate indifference. **Ex. C**. Surgery to repair the plaintiff's hernia was never of an emergent nature. State officials agreed to repair the hernia after the plaintiff brought a habeas corpus action in state court because there was time while the plaintiff was incarcerated and it was appropriate to

repair the hernia at some point. **Ex. C**. The medically appropriate standard of care was met at all times with regard to the treatment of the plaintiff's inguinal hernia. At no time did any of the defendants in this matter or any other medical personnel provide the plaintiff with anything but good medical care for his hernia. At no time was the plaintiff suffering from any risk to his health or safety. **Ex. C**.

## II.     ARGUMENT

### A.     STANDARD

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." *Anderson v. Liberty Lobby*, Inc. 477 US 242, 247-248 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* A "material fact" is one whose resolution will affect the ultimate determination of the case. *Id.* In determining whether a material fact exists, the court must resolve all ambiguities in favor of the non-moving party. *Id*. at 255. *See also J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990), *cert. denied*, 499 U.S. 921 (1991). In further comment regarding the use of summary judgment the Supreme Court has stated:

> summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules, as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.

*Celotex Corp. v. Catrett*, 477 US. 317, 327 (1986).

Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," *Capital Imaging Assocs. v. Mohawk Valley Medical Assocs.*, 996 F.2d 537, 541 (2d Cir.) *cert. denied*, 510 U.S. 497 (1993), and to "isolate and dispose of factually unsupported claims." *Celotex Corp.*, at 323-324.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. Those facts that are material will be identified by the substantive law governing the case. *Anderson*, 477 U.S. at 248. Once the moving party meets its burden, the burden shifts to the non-moving party.

To defeat a motion for summary judgment, the non-moving party may not merely rely upon unsupported allegations made in their amended complaint, nor rely on "mere speculation or conjecture". *Knight v. Fire Insurance Company*, 804 F.2nd 9, 12 (2nd Cir. 1986), *cert. denied*, 480 U.S 932 (1987). The evidence must be presented in a manner consistent with its admissibility at trial. See *First National Bank Co. of Clinton, Ill. v. Insurance Co. of North America*, 606 F.2d 760 (7th Cir. (1979) (in ruling on summary judgment motion, the court properly relied upon documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to the litigants from third persons, and hearsay which does not fall under one or more exceptions listed in rules 803-805 of the Federal Rules of Evidence, may not be properly considered. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Beyene v. Coleman Security Service, Inc*., 854 F.2d 1179 (9th Cir. 1988); *Edward B. Marks Music Corp. v. Stansy Music Corp.*, 1 F.R.D. 720 (S.D.N.Y. 1941). Moreover, the plaintiff must point to "specific facts showing that there is a genuine issue for trial." Rule 56(e); *Anderson*, 477 U.S. at 248. The

8

plaintiff must also produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. V. C.I.T. Financial Services Corp*, 812 F.2d 141, 144 (3d Cir. 1987).

### B.   NO DELIBERATE INDIFFERENCE

The Eighth Amendment protects inmates from deliberate indifference by prison officials to their serious medical needs. *Estelle v. Gamble,* 429 U.s. 97, 104 (1976). To prevail on such a claim, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. *See id.* at 104-105. Mere negligence will not support a section 1983 claim; the conduct of complained of must "shock the conscience" or constitute a "barbarous act". *McCloud v. Delaney,* 677 F. Supp. 230, 232 (S.D.N.Y. 1988), *citing United States ex rel. Hyde v. McGinnis,* 429 F.2d 864 (2d Cir. 1970). A treating physician will be liable under the Eighth only if his conduct is "repugnant to the conscience of mankind." *Tomarkin v. Ward,* 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) *quoting Estelle,* 429 U.S. at 105-06.

The civil rights statute was not meant to redress medical malpractice claims that can be adequately resolved under state tort law. *Tomarkin,* 534 F. Supp. at 1230-31.[1] Thus, a claim of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, is not cognizable under section 1983. *See McNabe v. Nassau County Medical Center,* 453 F.2d 698, 704 (2d Cir. 1971); *Tomarkin,* 534 F. Supp. at 1230. In addition, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment. *See Hyde v. McGinnis,* 429 F.2d 864, 868 (2d Cir. 1970); *Corby*

---

[1]   It is the position of defendants that this cause of action would be insufficient even under a negligence standard in state court, as the facts described above make clear.

9

*v. Conboy,* 457 F.2d 251, 254 (2d Cir. 1972); *Ross v. Kelly,* 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard. *See Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom., Foote v. Hathaway,* 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). *See also Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, *J.*, dissenting: "'[The] serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain."). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment of treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998)(citation & internal quotations omitted). In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. *See Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir. 2000).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." *Hathaway*, 37 F.3d at 66 (citation omitted). "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health of safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id. (quoting Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

In this case, neither the objective nor the subjective tests are met. First of all, the medical records in this case do not establish that the plaintiff's condition was "sufficiently serious." Plaintiff only complained that he was currently experiencing pain a single time, to the A.P.R.N. **Medical Records 251.**[2] The A.P.R.N. indicated in her notes that she saw no objective symptoms of pain, however, noting that the plaintiff was able to walk and get in and out of a chair "without noted discomfort." **Medical Records 251.** When the plaintiff saw Dr. Pillai four days later, he did not report pain, but occasional constipation. **Medical Records 251.**

Moreover, the plaintiff had lived with the hernia for ten years at this point in time, including a 10 month period when he was incarcerated and did not receive surgery for the hernia from October of 1999 until August 30, 2000. There was no indication at any time that the hernia was becoming more painful than it had been those ten years, or that it was getting any bigger. In fact, when the plaintiff saw Dr. Wright on *two* subsequent occasions, the hernia was not palpable, and only made itself known occasionally. **Medical Records 250**. The plaintiff was did not report any pain to Dr. Wright, or on any subsequent occasion.

This case is similar to *Arroyo v. City of New York,* 2003 U.S. Dist. LEXIS 16727 (S.D.N.Y. Sep. 30, 2004), attached. In that case, the District Court held that denial of surgery and the prescription of non-surgical care for an "inguinal hernia was not objectively a 'serious' enough condition to satisfy the objective prong of the test." *Id. citing Gonzalez v. Greifinger,* No. 95 Civ. 7932(RWS), 1997 U.S. Dist. LEXIS 18677, *7 (S.D.N.Y. Nov. 22, 1997) (holding that an 11-month delay in repairing an inguinal hernia did not satisfy the constitutional serious medical need standard.). The same conclusion the Court reached in *Arroyo* can be reached in this matter with regard to the objective prong of the *Estelle* analysis:

---

[2] The plaintiff indicated to Dr. Wright that he experienced "pain occasionally", but did not report that he was experiencing pain during his visit with Dr. Wright. **Medical Records 250.**

> Plaintiff's condition was not "one of urgency that may produce death, degeneration, or extreme pain," and was far less serous than the types of conditions that have been found to constitute "serious medical needs," Plaintiff has not alleged, let alone presented evidence to show, that his condition was, at any point, "fast degenerating" or "life threatening" or that defendants delayed necessary medical treatment in order to punish him.

*Arroyo, supra* *8-9.

In the same manner, the plaintiff's claim fails under the subjective prong as well. Like the plaintiff in this case, the plaintiff in *Arroyo* presented with a hernia of several years duration. The plaintiff in *Arroyo* first noticed his inguinal hernia in 1993. *Id.* at * 9. In *Arroyo,* one month before the plaintiff was incarcerated, a private medical care provider had diagnosed the plaintiff with an "easily reducible RIH" [right inguinal hernia] and "told to purchase a scrotal support, or truss, for comfort". *Id.* at *9. Treating the plaintiff's hernia in this manner was not considered to evince a subjectively indifferent state of mind. *Id.* at *9. The same can be said here. Drs. Pillai and Wright did not refuse to treat the plaintiff or treat him in such a way as to suggest they were indifferent to his needs. The followed up with the plaintiff as frequently as requested, and the plaintiff was never in pain when he saw either of them.

In this case, the total period between the plaintiff's initial complaint and the surgery was little over a year. The plaintiff never complained that the truss did not work (in fact, he never complained that the truss was too small until after he went to court on his related habeas corpus action). The plaintiff never complained that the hernia interfered with daily activities such as walking, and no pain was noticed by caregivers. Nichols never claimed he could not reduce the hernia, and rather than growing bigger, the hernia could not even be palpated.[3]

---

[3] *Cf Torrez v. Richter,* 2004 U.S. Dist. LEXIS 10781 (D. Or. June 7, 2004) (Finding that a jury could find deliberate indifference to the needs of an inmate with an inguinal hernia given the

### C.     INSUFFICIENT PERSONAL INVOLVEMENT AS TO WOLLENHAUPT, SHEA AND PESANTI

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws." *Rizzo v. Goode* 423 U.S. 362, 370-71 (1976), *quoting* 42 U.S.C. §1983.  Where damages are sought in a §1983 action, the defendant(s) must be responsible for the alleged constitutional deprivation.  Thus, an allegation of personal involvement is a necessary prerequisite for a valid cause of action under §1983.  *See, e.g., Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987); *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033 (1973), *rev'd on other grounds, Graham v. Connor*, 490 U.S. 386 (1989); *McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977), *cert. denied,* 434 U.S. 1087 (1978).  Consistent with the requirement that personal involvement is required for a claim under §1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* does not suffice to state a claim under §1983.  *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 692-95 (1978).  Thus, in order to state a cognizable claim, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to support their liability for wrongful acts," not merely their "linkage in  the chain of command." *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir. 1985).

Supervisory responsibility alone is not enough to confer exposure to liability.  *Williams v. Smith*, 781 F.2d 313, 323 (2d Cir. 1986); *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir. 1974).

---

following conditions:  the plaintiff was in custody with the hernia "over a period of some years", he complained that the hernia belt gave him no relief, complained that he was in frequent and increasing pain, complained that he had difficulty walking and climbing stairs, the defendants had noted in the chart that the hernia had grown bigger, and care providers noticed he had difficulty walking.  Moreover, the plaintiff in that case reported he had difficulty reducing the hernia on two occasions.  *Id.* at *23.

A supervisory official may only be liable if it is alleged that he or she learned of the violation and failed to remedy the wrong, if he created or permitted the policy or wisdom under which the unconstitutional practices occurred, or if he was grossly negligent in managing subordinates who caused the violation. *Williams v. Smith,* 781 F.2d at 323-24; *Meriwether v. Coughlin,* 879 F.2d 1037 (2d Cir. 1989). "A plaintiff must thus allege a tangible connection between the acts of the defendants and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986). An official cannot be held liable merely because he or she occupies a high position in the prison hierarchy. *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995).

In this case, the plaintiff has alleged insufficient personal involvement as to the defendant Dr. Pesanti, who is not alleged to have done anything with regard to the plaintiff other than be in the chain of command of persons making medical decisions. He has likewise alleged insufficient personal involvement as to Nurse Wollenhaupt, who is alleged to have communicated with about this issue but who is not alleged to have any decision-making ability with regard to the plaintiff generally or any input into the decisions the defendant doctors were making as to his treatment specifically. The same is true of Pamela Shea. Judgment should be entered in favor of all three on this basis, in addition to the lack of a sufficient claim for deliberate indifference.

D. **IN ANY EVENT, THIS ACTION IS SUBJECT TO DISMISSAL ON THE GROUNDS OF QUALIFIED IMMUNITY**

The doctrine of qualified immunity protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995); *Oliviera v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076 (1995). This doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their position of public trust and the need to shield officials who responsibly perform their duties from the costs of defending an action. *Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987); *Harlow v. Fitzgerald,* 457 U.S. at 814. Assertion of the privilege should be upheld unless the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 438 U.S. at 640. The doctrine of qualified immunity for government officials serves not only as a defense from liability, but also to dismiss an action when the plaintiff has failed to claim the violation of clearly established law or to allege the clear violation of a constitutional right. *Behrens v. Pelletier,* 516 U.S. 299, 306-307 (1996) ; *Jermosen v. Smith,* 945 F.2d 547, 553 (2d Cir. 1991), *cert. denied,* 503 U.S. 962 (1992).

In this case, all of the defendants are entitled to qualified immunity. The status of the law is not such that a single one of the defendants would have known that his or her conduct with regard to the plaintiff constituted deliberate indifference. *See, e.g., Alvarez v. Liscum,* 89 Fed. Appx. 297 (2d Cir. 2004).

### III. **CONCLUSION:**

Judgment should enter in favor of all defendants for all of the reasons set forth above.

DEFENDANTS
Dr. Pesanti, et al

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:   __/s/_____
Lynn D. Wittenbrink
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct08575
lynn.wittenbrink@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 26th day of August 2004:

Kenneth E. Nichols
145 Arbor Dr
Southport, CT 06490

__/s/_____
Lynn D. Wittenbrink
Assistant Attorney General