ROBERT ARROYO, Plaintiff, -vs.- THE CITY OF NEW YORK, N.Y.C.
DEPARTMENT OF CORRECTION, HOSPITAL ADMINISTRATOR, C-73, ST.
BARNABAS HOSPITAL ADMINISTRATOR, DR. "JOHN" MOHAMMAD, First
name being fictitious, real name being unknown, DR.
HARJINGER BHATTI, DR. JUDE ARIRIGUZO, DR. "JOHN" AUGUST,
First name being fictitious, real name being unknown, DR.
JEAN VALCOURT, DR. "JOHN DOE", Full name being fictitious,
real name being unknown, DR. SUNG KIM, DR. YE HUM KIM, THE
NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, ST. BARNABAS
HOSPITAL, ST. BARNABUS CORRECTIONAL HEALTH SYSTEMS, INC.,
THE NEW YORK CITY CORRECTIONAL HEALTH SERVICES, THE NEW YORK
CITY DEPARTMENT OF HEALTH, Defendants.

99 Civ. 1458 (JSM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

2003 U.S. Dist. LEXIS 16727

September 25, 2003, Decided
September 30, 2003, Filed

DISPOSITION: Defendants' motion for summary judgment dismissing second amended
complaint granted.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff inmate sued under 42 U.S.C.S. a 1983,
alleging that defendants violated his Eighth Amendment right to be free from
cruel and unusual punishments by delaying for eight months allegedly necessary
surgery for an inguinal hernia. Defendants moved for summary judgment on various
grounds, including failure to exhaust administrative remedies and failure to
proffer evidence of deliberate indifference to the inmate's serious medical
needs.

OVERVIEW:  Under the Prison Litigation Reform Act, 42 U.S.C.S. a 1997e(a),
a prisoner could not bring a a 1983 action until he had exhausted administrative
remedies. The court held that the inmate failed to pursue his administrative
remedies. In October 1998, the inmate filed a grievance stating that he had been
denied surgery for a hernia that caused him great pain and suffering. His
complaint was heard in a first level informal proceeding. Plaintiff accepted the
resolution proffered, and was further examined in a prison health clinic. When
that examination resulted only in further non-surgical interventions, and he was
not scheduled promptly for surgery, he did not renew his grievance or otherwise

seek to use the extensive five step inmate grievance resolution program that was in place. His failure to do so precluded his a 1983 action, despite his claim that it would have been irrational for him to appeal what he perceived to be a favorable result. Even if the inmate had exhausted his administrative remedies, he failed to state a claim under the Eighth Amendment. The inmate alleged only negligence. There was no evidence that the inmate ever was denied medical treatment.

OUTCOME:  Defendants' motion for summary judgment was granted and the second amended complaint was dismissed.

CORE TERMS:  surgery, hernia, summary judgment, inguinal, administrative remedies, deliberate indifference, clinic, prescribed, grievance, pain, objectively, subjective, prisoner, delayed, scheduled, diagnosed, surgical, qualified immunity, substantial risk, produce death, serious harm, extreme pain, medical need, state law, complications, degeneration, malpractice, surgically, exhausted, municipal

LexisNexis(R) Headnotes Hide Headnotes

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation Reform Act
    [HN1] The Prison Litigation Reform Act, 42 U.S.C.S. a 1997e(a) provides that a prisoner may not bring an action pursuant to 42 U.S.C.S. a 1983 or any other Federal law until he has exhausted any available administrative remedies.

Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment
    [HN2] In order to state a claim for an unconstitutional denial of medical care, a plaintiff must prove "deliberate indifference" to his serious medical needs. The deliberate indifference standard has both an objective and a subjective component. First, the alleged condition must be objectively sufficiently serious. Such seriousness has been defined as a condition of urgency, one that may produce death, degeneration, or extreme pain. Subjective complaints of pain are not sufficient to satisfy this standard. Second, the defendant must: know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment
    [HN3] Charges that amount only to allegations of malpractice, and mere disagreements with respect to the quality of medical care do not state an Eighth Amendment claim. Accordingly, a delay in treatment does not violate the Eighth Amendment unless it involves an act or a failure to act that evinces a conscious disregard of a substantial risk of serious harm.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
    [HN4] Mere conclusory allegations, speculation or conjecture will not
avail a party resisting summary judgment.

COUNSEL: [*1] Robert Arroyo, PLAINTIFF, Pro se, East Elmhurst, NY USA.

For Robert Arroyo, PLAINTIFF: Joshua S Ketover, Norman David Lipton, Kirk,
Medina, Lipton, Ketover & Collelvori, Garden City, NY USA.

For New York State Department of Correctional Services, NYC Correctional Health
Services, New York City Department of Health, DEFENDANTS: Steven Charles
Stern, Corporation Counsel of the City of New York, Brooklyn, NY USA.

For St Barnabas Hospital, Administrator, Dr YE Hum Kim, DEFENDANTS - THIRD-PARTY
PLAINTIFFS - CROSS-CLAIMANTS: Andrew Zwerling, Garbarini & Scher, PC, New York,
NY USA.

For The City of New York, DEFENDANT: Steven Charles Stern, Michael D Hess,
Corporation Counsel of the City of New York, New York, NY USA. Steven Charles
Stern, Corporation Counsel of the City of New York, Brooklyn, NY USA.

For The New York City Health and Hospitals Corporation, THIRD-PARTY DEFENDANT:
Kurt Lee Weinmann, Garbarini & Scher, PC, New York, NY USA. Steven Charles
Stern, Corporation Counsel of the City of New York, New York, NY USA. Steven
Charles Stern, Corporation Counsel of the City of New York, Brooklyn, NY USA.

For The City of New York, DEFENDANT: Steven Charles Stern, [*2] Corporation
Counsel of the City of New York, New York, NY USA.

For St Barnabas Hospital, THIRD-PARTY PLAINTIFF: Andrew Zwerling, Garbarini &
Scher, PC, New York, NY USA.

For Judge Drivigege, MD, Patrice Milord, MD, EZI-Ash James, MD, Azuka Anyoku,
MD, Anook Toussanint, MD, Amjad Iqbal, MD, "John Dichiaro, PA, Santiago Abreu,
PA, Jorve Villalobos, PA, Sean O'Grady, PA, Edzer Roche, PA, S Noel, RN, Gertha
Fenelon, RN, John Doe, MD, # 1, John Doe, PA, # 2, John Doe, MD # 3, John Doe,
MD, # 4, John Doe, MD, # 5, John Doe, MD, # 6, John Doe, MD # 7, John Doe, RN, #
8, John Doe, RN, # 9, THIRD-PARTY DEFENDANTS: George J Kehayas, Garbarini &
Scher, New York, NY USA.

JUDGES: JOHN S. MARTIN, JR., U. S. D. J.

OPINIONBY: JOHN S. MARTIN, JR.

OPINION: OPINION & ORDER

JOHN S. MARTIN, JR., District Judge:

Plaintiff Robert Arroyo brings this action pursuant to 42 U.S.C. a 1983, alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishments by delaying for eight months allegedly necessary surgery for an inguinal hernia. Defendants have moved for summary judgment on various grounds, including Plaintiff's failure to exhaust[*3] administrative remedies, the failure to proffer evidence of deliberate indifference to Plaintiff's serious medical needs, the lack of personal involvement by the individual Defendants, qualified immunity, the failure to plead an unconstitutional pattern or practice by the municipal Defendants, the fact that the Department of Corrections and Correctional Health Services are agencies that may not be sued, and, to the extent that Plaintiff implies that he may have claims under state law, the failure to file a notice of claim.

Failure to Exhaust Administrative Remedies

[HN1] The Prison Litigation Reform Act, 42 U.S.C. a 1997e(a) provides that a prisoner may not bring an action pursuant to 42 U.S.C. a 1983 or any other Federal law until he has exhausted any available administrative remedies. In this case, Plaintiff failed to pursue his administrative remedies, and for that reason alone, this action must be dismissed.

In October 1998, Plaintiff filed a grievance stating that he had been denied surgery for a hernia that caused him great pain and suffering. His complaint was heard in a first level informal proceeding, in which it was proposed[*4] that it be resolved as follows:

"On 10/26/98 the IGRC contacted the Clinic Manger. Grievant will be called down to have an examination. Action requested is accepted."

Plaintiff accepted this resolution, and was further examined in the clinic at Riker's Island. When that examination resulted only in further non-surgical interventions, and he was not scheduled promptly for surgery, he did not renew his grievance or otherwise seek to use the extensive five step inmate grievance resolution program that is in place at Riker's Island. His failure to do so precludes this action, despite his claim that it would have been irrational for him to appeal what he perceived to be a favorable result. Even if Plaintiff thought that he had been promised prompt surgery after his informal grievance review, shortly thereafter he obviously knew that surgery had not been performed, or even scheduled. He presents no explanation as to why he did not at least inquire as to why surgery that he allegedly thought he had been promised had not been forthcoming.

Denial of Medical Care

Even if Plaintiff had exhausted his administrative remedies, he has not sufficiently stated a claim for[*5] violation of the Eighth Amendment.

[HN2] In order to state a claim for an unconstitutional denial of medical care, a plaintiff must prove "deliberate indifference" to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard has both an objective and a subjective component. First, the alleged condition must be objectively "sufficiently serious." Such seriousness has been defined as "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied, 513 U.S. 1154 (1995). Subjective complaints of pain are not sufficient to satisfy this standard. Espinal v. Coughlin, 98 Civ. 2579 (RPP), 2002 U.S. Dist. LEXIS 20, *9 (S.D.N.Y. Jan. 2, 2002); Chatin v. Artuz, No. 95 Civ. 7994 (KTD), 1999 U.S. Dist. LEXIS 11918, *11 (S.D.N.Y. Aug. 4, 1999), aff'd, 28 Fed. Appx. 9, 2002 U.S. App. LEXIS 86 (2002)("[Plaintiff's] alleged problems in his right foot may indeed be very real. His pain is not, however, of the type contemplated for satisfaction of the[*6] objective standard." (citing Liscio v. Warren, 901 F.2d 274, 277 (2d Cir. 1990)). Second, the Defendant must:

know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Hathaway v. Coughlin, 37 F.3d at 66 (2d Cir. 1994)(quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994)).

[HN3] Charges that amount only to allegations of malpractice, and mere disagreements with respect to the quality of medical care do not state an Eighth Amendment claim. Estelle v. Gamble, 429 U.S. at 105-06, 97 S. Ct. at 292 ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). See also Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998), Espinal v. Coughlin, 2002 U.S. Dist. LEXIS 20, [*7] *10; Brown v. McElroy, 160 F. Supp. 2d 699, 705-06 (S.D.N.Y. 2001); Culp v. Koenigsmann, 99 Civ. 9557 (AJP), 2000 U.S. Dist. LEXIS 10168, *32 (S.D.N.Y. July 19, 2000). Accordingly, a delay in treatment does not violate the Eighth Amendment unless it involves an act or a failure to act that evinces "a conscious disregard of a substantial risk of serious harm." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)); Espinal v. Coughlin, 2002 U.S. Dist. LEXIS 20, *9 ("The Second Circuit has 'reserved such a classification for cases in

which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years.").

Application of the deliberate indifference standard to the facts of this case makes clear that summary judgment must be granted in favor of the Defendants. First, Plaintiff's inguinal hernia was not objectively a "serious" enough condition to satisfy the objective prong of the test. In Gonzalez v. Greifinger, No. 95 Civ. 7932 (RWS), 1997 U.S. Dist LEXIS 18677,*7 (S.D. [*8] N.Y. Nov. 22, 1997), the Court found that an 11 month delay in surgically repairing the plaintiff's umbilical hernia, followed by surgery that resulted in complications, failed to satisfy the constitutional serious medical need standard.

Other courts have found objectively insufficient claims relating to a toothache, Tyler v. Rapone, 603 F. Supp. 268, 271-72 (E.D. Pa. 1985), a broken finger, Rodriguez v. Joyce, 693 F. Supp. 1250, 1252-53 (D. Me. 1988), and pain in the knee, Espinal v. Coughlin, 2002 U.S. Dist. LEXIS 20, *9. See also Abdul-Akbar v. Dept. of Corrections, 910 F. Supp. 986, 1006 (D. Del. 1995), aff'd, 111 F.3d 125 (3rd Cir.), cert. denied, 522 U.S. 852 (1997) ("It is questionable whether a hernia is a 'serious medical need.'").

In this case, Plaintiff's condition was not "one of urgency that may produce death, degeneration, or extreme pain," and was far less serious than the types of conditions that have been found to constitute "serious medical needs." Plaintiff has not alleged, let alone presented evidence to show, that his condition was, at any point, "fast degenerating" [*9] or "life threatening," or that Defendants delayed necessary medical treatment in order to punish him.

Secondly, with respect to the subjective prong, all that Plaintiff has alleged is negligence. There is no evidence that Plaintiff ever was denied medical treatment. To the contrary, he testified that he was promptly taken to the clinic whenever he asked to be, and it is clear that he was seen in the clinic at Riker's Island more than 30 times during the eight month period at issue here. n1 Also, there is ample evidence in the record of attempts to ameliorate Plaintiff's condition without surgery. The hernia, which Plaintiff first noticed 1993, and which was repeatedly diagnosed as a reducible hernia, was reduced at least twice. He was prescribed pain medication, a scrotal support, various trusses, ice packs, elevation, and a surgical consultation was requested. Ultimately, in January 1999, the hernia was surgically repaired at Kings County Medical Center. These interventions were consistent with the diagnosis made and treatment prescribed at Beth Israel Hospital one month before Plaintiff was incarcerated. There too he was diagnosed with an "easily reducible RIH [right inguinal hernia],[*10] " and told to purchase a scrotal support, or truss, for comfort. At that time, he also was given an appointment for a surgical consultation, which he did not attend. n2

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n1In addition to treatment for the hernia, Plaintiff was treated for a number of other conditions while incarcerated at Riker's Island. He received medical attention for drug dependency, mental health issues, dyspepsia, heartburn, and ingrown toe nails, and was prescribed eyeglasses at the Riker's Island clinic. Thus, there is absolutely no evidence his medical needs were ignored by Defendants.

n2 Plaintiff's alleged urgent need and desire for surgery is further undercut by his refusal to undergo prescribed surgery for a left inguinal hernia, which was diagnosed and scheduled at the time of the surgical repair of the right inguinal hernia.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Moreover, Plaintiff has not alleged that the hernia became worse, n3 or that his general condition deteriorated as a result of the alleged delay in surgery. The evidence also is that, unlike in Gonzalez v. Greifinger, 1997 U.S. Dist. LEXIS 18677,[*11] the surgery ultimately was performed successfully and without complications.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n3His allegation is that the hernia was, at all times, the size of a softball.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Finally, Defendants have presented evidence that attempting to treat a hernia conservatively prior to performing surgery constitutes reasonable medical practice. Plaintiff, on the other hand, did not present any medical opinion testimony to support his argument that it was unreasonable to first attempt to treat his hernia non-surgically, and to resort to surgery only after such methods had failed. See Culp v. Koenigsmann, 2000 U.S. Dist. LEXIS 10168, *11. Accordingly, Plaintiff has failed to meet his burden of proof in opposition to Defendants' motion for summary judgment. Celotex v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996)("Mere        [HN4] conclusory allegations, speculation or conjecture will not avail a party resisting[*12] summary judgment."); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995).

It also appears that Plaintiff has not alleged that the municipal Defendants

engaged in a pattern or practice of indifference to prisoners' medical needs, as required by Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978); Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Nor has Plaintiff alleged any personal participation by Dr. Ye Hum Kim. However, in light of the foregoing, there is no need to address either these issues or the Defendants' claims of qualified immunity. Furthermore, having dismissed all of Plaintiff's federal claims, the Court also will dismiss whatever state law claims he intended to state pursuant to this Court's supplemental jurisdiction. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966).

Conclusion

   For the foregoing reasons, Defendants' motion for summary judgment is granted and the Second Amended Complaint is dismissed.

   SO ORDERED.

Dated: [*13] New York, New York

   September 25, 2003

   JOHN S. MARTIN, JR.

   U. S. D. J.

ANTHONY TORREZ, Plaintiff, v. JOSEPH M. RICHTER, et al.,
Defendants.

No. CV-03-770-HU

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON

2004 U.S. Dist. LEXIS 10781

June 4, 2004, Decided
June 7, 2004, Filed

DISPOSITION: [*1] Magistrate recommended Defendants' motion for summary judgment should be denied.

CASE SUMMARY

PROCEDURAL POSTURE:  Plaintiff inmate brought an action against defendants, two doctors, a nurse, and one other individual, asserting claims under the Eighth and Fourteenth Amendments to the United States Constitution. Defendants moved for summary judgment. The case was referred to a magistrate for a report and recommendation.

OVERVIEW:  The inmate had a hernia for years. It was treated with a hernia belt, and pain medication. He was given a low bunk restriction, that was later lifted. He was refused a low-tier housing restriction. The inmate claimed the treatments were ineffective, he was in constant pain, and the hernia had become worse. Defendants presented insufficient evidence to negate the inmate's claim that he had exhausted his administrative remedies without an administrative appeal, since he had not been made aware of the rule requiring administrative appeals. The magistrate was persuaded that the action was brought against defendants in their individual capacities. Defendants asserted that what was at issue was a mere difference of opinion as to which medically acceptable course of treatment should be followed. The magistrate disagreed. There was sufficient evidence from which a jury could have found in the inmate's favor. A reasonable jury could also have found the requisite element of intent, since the inmate's complaints were consistently discounted. The inmate presented a cognizable legal theory and sufficient facts to constitute a claim under that theory.

OUTCOME:  The magistrate recommended that defendants' motion for summary judgment be denied.

CORE TERMS:  hernia, pain, summary judgment, inmate, bunk, qualified immunity, surgical, repair, administrative remedies, constitutional right, personal liability, medical treatment, injunctive relief, belt, affirmative defense, color of state law, inguinal, immunity, grievance, constant, stairs, parte,

tier, federal law, deliberate indifference, failure to exhaust, substantial
risk, state official, money damages, state officer

LexisNexis(R) Headnotes Hide Headnotes

Civil Procedure: Summary Judgment: Summary Judgment Standard
    [HN1] Summary judgment is appropriate if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any material fact
and that the moving party is entitled to a judgment as a matter of law. Fed.
R. Civ. P. 56(c). Summary judgment is not proper if material factual issues
exist for trial. A genuine dispute arises if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party. Credibility
determinations, the weighing of the evidence, and the drawing of legitimate
inferences from the facts are jury functions, not those of a judge, when he is
ruling on a motion for summary judgment. On a motion for summary judgment, the
court must view the evidence in the light most favorable to the non-movant and
must draw all reasonable inferences in the non-movant's favor.

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation
Reform Act
    [HN2] See 42 U.S.C.S. a 1997e(a).

Constitutional Law: Civil Rights Enforcement: Prisoners: Prison Litigation
Reform Act
    [HN3] The exhaustion requirement in 42 U.S.C.S. a 1997e(a) applies
to all inmate suits concerning prison conditions, including suits for money
damages. The word "available" refers to the procedural means, not the particular
relief requested. Exhaustion under the Prison Litigation Reform Act of 1995
(PLRA) is an affirmative defense, on which defendants have the burden of proof.

Civil Procedure: Summary Judgment: Burdens of Production & Proof
Civil Procedure: Summary Judgment: Summary Judgment Standard
    [HN4] A party moving for summary judgment has both the initial burden
of production and the ultimate burden of persuasion on a motion for summary
judgment. To carry their ultimate burden of persuasion on the motion for summary
judgment, defendants must persuade the court that there is no genuine issue of
material fact.

Constitutional Law: State Autonomy
    [HN5] See U.S. Const. amend. XI.

Constitutional Law: State Autonomy
    [HN6] Although the Eleventh Amendment does not explicitly prohibit an
action in federal court against a state by one of the state's own citizens, the
Supreme Court has construed the Eleventh Amendment as barring such suits. Thus,

the Eleventh Amendment bars unconsented-to suits in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury. The Eleventh Amendment encompasses not only actions in which a state is actually named as the defendant, but also certain actions against state agents and state instrumentalities. Suits brought against state officials in their official capacity generally represent only another way of pleading an action against an entity of which the officer is an agent, and are treated as suits against the state.

Constitutional Law: State Autonomy
Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials

[HN7] Although the Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court, such officials may be enjoined by a federal court to conform their future conduct to the requirements of federal law. This applies to federal constitutional violations and to violations of federal statutory law. A state officer acting in violation of federal law is considered "stripped of his official or representative character" and, consequently, is not shielded from suit by the state's sovereign immunity. The distinction between the relief permitted under the doctrine of Ex parte Young and the relief barred by Edelman is the difference between prospective relief on one hand and retrospective relief on the other. The federal court may award prospective injunctive relief that governs a state official's future conduct, but not retroactive relief that requires payment of funds from the state treasury. Ex parte Young requires that the officer "must have some connection" with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

Constitutional Law: State Autonomy
Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials

[HN8] While official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent, personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Thus, actions for damages brought against state officials in their personal capacity, seeking to impose personal liability for actions taken under color of state law, are not barred by the Eleventh Amendment. To establish personal liability in a 42 U.S.C.S. a 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.

Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials

[HN9] An action is brought against a state official in his or her official capacity when it is asserted not against the official as an individual, but rather against the official's office. The phrase "acting in their official capacities" is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged

injury. An action is brought against a state official in his or her individual capacity when it is asserted against the defendant as an individual. The fact that the state officer and the state have an indemnity arrangement is not relevant to the analysis.

Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials

[HN10] Public officials are entitled to qualified immunity from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief.

Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials

[HN11] A qualified immunity analysis must begin with this threshold question: based upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right? If no constitutional right was violated, the court need not inquire further. If, however, a constitutional violation occurred, the second inquiry is whether the right was clearly established. The inquiry into whether rights were clearly established should be conducted by looking at the application of the constitutional right in its particularized context. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. If violation of a clearly established constitutional right has been shown, the third inquiry is whether the officer could nevertheless have reasonably, but mistakenly believed that his or her conduct did not violate a clearly established constitutional right.

Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment

[HN12] A 42 U.S.C.S. a 1983 claim for inadequate medical treatment under the Eighth and Fourteenth Amendments requires proof that the health care professional showed "deliberate indifference to" the inmate's "serious medical needs." A medical need is serious if the failure to treat the condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Deliberate indifference requires the inmate to show that the official knew of and disregarded a substantial risk of serious harm to his health or safety. Mere negligence is not sufficient to establish liability. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. A prison official is deliberately indifferent to a substantial risk of serious harm to inmates if that official is subjectively aware of the risk and does nothing to prevent the resulting harm. Deliberate indifference requires that an official both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Constitutional Law: Civil Rights Enforcement: Prisoners: Medical Treatment

[HN13] The final inquiry for deliberate indifference to an inmate's serious medical needs under Saucier is whether a reasonable medical officer would have understood that his or her decision was impermissible under the Eighth Amendment.

COUNSEL: For plaintiff: Judy Danelle Snyder, Katelyn S. Oldham, Law Offices of Judy Snyder, Portland, Oregon.

For defendants: Hardy Myers, Attorney General, Lynne D. Rennick, Assistant Attorney General, Department of Justice, Salem, Oregon.

JUDGES: Dennis J. Hubel, United States Magistrate Judge.

OPINIONBY: Dennis J. Hubel

OPINION: FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge:

Plaintiff Anthony Torrez is an inmate at the Two Rivers Correctional Institution (TRCI) in Umatilla, Oregon. He brings this action against four defendants: Joseph M. Richter, Steve Shelton, M.D., Greg Lytle, D.O., and Heather Villanueva, R.N., asserting claims under the Eighth and Fourteenth Amendments to the United States Constitution. Torrez alleges that the defendants have been deliberately indifferent to his serious medical need for surgical repair of his inguinal hernia, in violation of the Eighth Amendment as made applicable to the states by the Fourteenth Amendment, and that they have violated his due process and equal protection rights under the Fourteenth Amendment. Torrez seeks injunctive relief, in the form of an order[*2] from the court directing the defendants to provide him hernia surgery and "cease ... future violations pertaining to medical treatment." Complaint, p. 7. He also requests compensatory and punitive damages, along with attorney's fees and costs. Defendants move for summary judgment (doc. # 31) on the grounds of failure to exhaust administrative remedies, defendants' immunity under the Eleventh Amendment, qualified immunity, and failure to state a claim.

Factual Background

In January 2001, Torrez was diagnosed with an inguinal hernia on the right side, n1 and began a course of non-surgical treatment. On February 14, 2002, Torrez requested and received a lower bunk restriction so that he would not have to climb up to his bunk. Affidavit of Greg Lytle, D.O., P 32; Affidavit of Anthony Torrez, P 4. In February 2001, Torrez was issued a hernia belt by TRCI Health Services, at his own expense. Lytle Affidavit, P 31; Torrez Affidavit, P 5.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 An inguinal hernia occurs when a portion of the intra-abdominal tissue protrudes through an abnormal enlargement of the normal opening in the ileo-inguinal ligament. Affidavit of Greg Lytle, D.O., P 10.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*3]

On July 5, 2001, Torrez reported to Health Services that his hernia was getting larger. Torrez Affidavit, P 6. According to Torrez, Health Services told him there was nothing further to be done for him unless the condition became life-threatening. Id.

On July 9, 2001, according to Torrez, he contacted Sundell, a Physician's Assistant with Health Services, to report that his hernia was getting worse. Id. at P 7. Torrez asked about surgical repair. Id. Torrez states that Sundell told Torrez "not to be so whiny." Id. According to defendants, Mr. Torrez did not complain about the hernia during the July 9, 2001 examination, but rather reported that the Naproxyn he had been prescribed was ineffective. Lytle Affidavit, P 35.

On November 20, 2001, Torrez returned to Health Services and asked Sundell about surgery. According to Torrez, Sundell again characterized Torrez as a whiner. Id. at P 8. Defendants deny that this event took place, according to the Lytle affidavit, after July 9, 2001, Torrez was not seen for complaints related to the hernia until January 11, 2002.

On January 11, 2002, Torrez asked Health Services to extend his lower bunk restriction for another[*4] year. The request was granted. Torrez Affidavit at P 10, Lytle Affidavit P 36.

On January 31, 2002, Torrez testifies that he saw Sundell for arthritis and asked her again, unsuccessfully, for relief for pain associated with the hernia. Torrez Affidavit, P 12.

On April 5, 2002, the lower bunk restriction was extended for another 14 years. Torrez Affidavit, P 13; Lytle Affidavit, P 37.

On April 26, 2002, Torrez again reported to Health Services that in spite of the hernia belt, he had been in pain for three days. Torrez Affidavit, P 15; Lytle Affidavit, P 38. Torrez also reported that showering was becoming difficult. Torrez Affidavit, P 15. Torrez was given a prescription for Naproxen, an anti-inflammatory. Id.

On May 3, 2002, Torrez reported to Health Services that he was experiencing more pain than previously, and that the hernia belt was not working. He requested an appointment with Sundell. Torrez Affidavit, P 16; Lytle Affidavit, P 39.

On May 7, 2002, Sundell examined Torrez and told him he would remain on the same course of treatment. Torrez Affidavit, P 17; Lytle Affidavit, P 40.

On June 3, 2002, Torrez wrote a letter to defendant Shelton about his request for surgical[*5] repair. Torrez Affidavit, P 18. On June 5, 2002, Torrez reported to Sundell that his work in the bakery was aggravating the pain from the hernia. Torrez Affidavit, P 19; Lytle Affidavit, P 41. On June 12, Sundell placed Torrez on light duty, restricted to lifting no more than 20 pounds. Torrez Affidavit, P 20; Lytle Affidavit, P 42. Torrez was moved from the bakery to the law library, where he continues to work. Torrez Affidavit, P 20.

On July 31, 2002, Torrez reported to sick call and asked for an appointment with Sundell. Torrez Affidavit, P 21. Torrez testifies that he saw Sundell on August 1, and told her he was in constant pain and experiencing anxiety because of the condition. Id. at 22. Sundell made no changes to Torrez's treatment. Id. According to defendants, Torrez made no complaints about the hernia on August 1, 2002. Lytle Affidavit, P 43.

On August 7, 2002, in response to the letter from Torrez, Dr. Shelton told Torrez the hernia would continue to be treated as before. Torrez Affidavit, P 23. On October 3, 2002, Torrez wrote a letter to Superintendent Robert Schiedler requesting assistance with surgical repair of the hernia. Torrez Affidavit, P 25.

Defendants[*6] assert that on September 18 and October 2, 2002, Torrez reported to Health Services "asking for clarification on purchase of care and his diagnosis of right inguinal hernia." Lytle Affidavit, P 44. Defendants assert that Torrez did not register any complaints or seek medical treatment at these visits. Id.

On October 9, 2002, Torrez sent an Inmate Communication to defendant Villanueva, Health Services Manager, asking for her assistance. Torrez Affidavit, P 26.

On October 17, 2002, Torrez again asked Sundell for surgical repair of the hernia. The request was denied. Torrez Affidavit, P 27; Lytle Affidavit, P 45.

On October 18, 2002, Torrez was examined by a Physician's Assistant. Torrez Affidavit, P 28; Lytle Affidavit, P 46. The hernia was found to be 5% enlarged since the last examination, in August 2002. Torrez Affidavit, P 28; Lytle Affidavit, P 46. However, defendants still did not feel that surgical

intervention was indicated and no change in treatment was ordered. Lytle Affidavit, P 46.

On February 12, 2003, Torrez reported to Health Services complaining of increased pain and discomfort. He requested a "low-tier" assignment, that is, assignment to a cell on the lowest[*7] floor so that he would not be required to climb stairs to his cell. Torrez Affidavit, P 29; Lytle Affidavit, P 49.

On February 19, 2003, Torrez was examined by Lytle. Lytle refused the request for a low tier assignment and also removed the low bunk restriction, on the ground that it was no longer necessary. Torrez Affidavit, P 30; Lytle Affidavit, P 49.

On March 14, 2003, Torrez again requested a low tier restriction. Torrez Affidavit, P 31. At that time, he reported pain radiating down his right leg. Id.; Lytle Affidavit, P 50. The nurse noted that Torrez walked with some difficulty. Lytle Affidavit, P 50. However, the low bunk restriction was not reimposed and the low tier restriction was not granted. Id.; Torrez Affidavit, P 31. No change in medical treatment was ordered. Lytle Affidavit, P 50.

On May 5, 2003, Torrez reported at sick call that his hernia had been difficult to reduce on two occasions. Torrez Affidavit, P 32; Lytle Affidavit, P 52. According to defendants, no hernia bulge was noted by the nurse. Lytle Affidavit, P 52. No change in medical treatment was ordered. Id.

Torrez testifies that on May 5, 2003, someone named Baggerly told him not to go to sick[*8] call any more about the hernia because Lytle would probably refuse to see him. Torrez Affidavit P 33.

Torrez states in his affidavit that because his complaints to Health Services had been unsuccessful in obtaining a change of treatment, resulting only in the loss of the low bunk restriction, and because he did not want to be viewed as non-compliant, he ceased his reports to Health Services despite continued pain, discomfort and restricted activities. Torrez Affidavit, P 34.

Torrez testifies in his affidavit that the hernia pops out at least twice a day, including whenever he showers, uses the bathroom or sneezes, and causes him constant pain. Id. at P 35. He says further that since January 2002 the hernia has become larger and more painful, and has increasingly limited his activities. Id. Torrez states that he is no longer able to run, participate in basketball, climb stairs or walk any distance without pain, and that the lifting restriction precludes him from performing non-sedentary occupations and from lifting weights, as he previously did. Id.

On January 31, 2003, Torrez submitted a grievance requesting surgical repair of the hernia. Id. at P 39; Affidavit of[*9] Alcea Nelson P 9. On February 10, 2003, Bridget Whelan, R.N., TRCI Nurse Manager, denied the grievance, stating

that Mr. Torrez had the option of surgical repair if he chose to pay for it. Nelson Affidavit, Attachment 3, p. 18; Torrez Affidavit, P 40.

On February 23, 2003, Torrez appealed to Health Services Administrator Joseph Richter. Nelson Affidavit, P 10; Torrez Affidavit, P 42. On March 10, 2003, Richter denied the appeal. Nelson Affidavit, Attachment 3, p. 2. On June 4, 2003, Torrez filed this action.

Standards

[HN1] Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary Judgment is not proper if material factual issues exist for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).

A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." State of California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003).[*10] Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, when he is ruling on a motion for summary judgment. Id.

On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. Clicks Billiards Inc. v. Sixshooters Inc., 251 F.3d 1252, 1257 (9th Cir. 2001).

Discussion

1. Failure to exhaust administrative remedies

Section 1997e(a) of the Prison Litigation Reform Act (PLRA), 42 U.S.C. a 1997e(a), states that        [HN2] "no action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [HN3] The exhaustion requirement applies to all inmate suits concerning prison conditions. Porter v. Nussle, 534 U.S. 516, 152 L. Ed. 2d 12, 122 S. Ct. 983 (2002), including suits for money damages. Booth v. Churner, 532 U.S. 731, 740, 149 L. Ed. 2d 958, 121 S. Ct. 1819 (2002).[*11] The word "available" refers to the procedural means, not the particular relief requested. Booth, 532 U.S. at 739. Exhaustion under the PLRA is an affirmative defense, on which defendants have the burden of proof. Wyatt v. Terhune, 315 F.3d 1108, 1117

(9th Cir. 2002).

Defendants assert that because Torrez failed to appeal Richter's denial to the Assistant Superintendent, he failed to complete the grievance processes available to him, and therefore failed to exhaust his administrative remedies. Defendants cite to a Department of Corrections rule which took effect on March 1, 2003. Nelson Affidavit, Attachment 1, p. 6-7.

Torrez does not deny that he did not appeal Richter's decision to the Assistant Director. However, he asserts that he was not made aware of the rule providing for appeals to the Assistant Director until after August 2003, when TRCI revised the inmate handbook. Torrez Affidavit, Exhibit 5. In their reply memorandum, defendants have submitted the earlier version of the rules, effective June 19, 2000, showing that the rule was the same. Defendants' Exhibit 104, p. 4-5. However, defendants have not submitted the inmate handbook which predates[*12] the August 2003 revision. The court is therefore unable to determine whether Torrez or any other inmate had notice of the June 2000 rule revision either.

[HN4] A party moving for summary judgment has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry their burden of production, defendants must produce evidence negating Torrez's exhaustion of administrative remedies. Id. To carry their ultimate burden of persuasion on the motion for summary judgment, defendants must persuade the court that there is no genuine issue of material fact. Id.

Defendants have the burden of proving their affirmative defense of failure to exhaust administrative remedies. The defendants' inability to show the absence of a genuine issue of material fact on whether Torrez had notice of the three grievance levels he was required to pursue precludes the defendants from prevailing on this affirmative defense. The proper remedy for a failure to exhaust administrative remedies under the PLRA is dismissal of the action without prejudice. Wyatt, 315 F.3d at 1117.[*13] The defendants have moved for summary judgment on the merits. So even if the defendants could show that Torrez had failed to exhaust all his administrative remedies, it would not serve judicial economy or fairness to the parties to dismiss the action without prejudice and require Torrez to pursue another level of administrative review, when the likely outcome would be no more than deferral of a decision on this motion.

2. Eleventh Amendment

Defendants assert that the action against them is barred by the Eleventh Amendment.

The Eleventh Amendment provides:

[HN5] The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.     [HN6] Although the Amendment does not explicitly prohibit an action in federal court against a state by one of the state's own citizens, the Supreme Court has construed the Amendment as barring such suits. See Welch v. Texas Highways & Pub. Transp. Dep't, 483 U.S. 468, 472, 97 L. Ed. 2d 389, 107 S. Ct. 2941 (1987). Thus, the Eleventh Amendment bars unconsented-to[*14] suits in federal court "by private parties seeking to impose a liability which must be paid from public funds in the state treasury." Edelman v. Jordan, 415 U.S. 651, 663, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974).

The Eleventh Amendment encompasses not only actions in which a state is actually named as the defendant, but also certain actions against state agents and state instrumentalities. Regents of the Univ. of Calif. v. Doe, 519 U.S. 425, 429, 137 L. Ed. 2d 55, 117 S. Ct. 900 (1997). Suits brought against state officials in their official capacity "generally represent only another way of pleading an action against an entity of which the officer is an agent," Graham, 473 U.S. at 165, and are treated as suits against the state. Id. at 166.

a. Ex parte Young

However,     [HN7] although the Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court, Kentucky v. Graham, 473 U.S. 159, 169, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985), under the doctrine of Ex parte Young, 209 U.S. 123, 155-56, 52 L. Ed. 714, 28 S. Ct. 441 (1908), such officials may be enjoined by a federal court to conform[*15] their future conduct to the requirements of federal law. Ex parte Young applies to federal constitutional violations and to violations of federal statutory law. See, e.g., Natural Resources Defense Council v. California Dep't of Transportation, 96 F.3d 420, 422 (9th Cir. 1996). A state officer acting in violation of federal law is considered "stripped of his official or representative character" and, consequently, is not shielded from suit by the state's sovereign immunity. Sofamor Danek Group, Inc. v. Brown, 124 F.3d 1179, 1183-84 (9th Cir. 1997), quoting Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 102, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984). See also Graham, 473 U.S. at 167 n. 14 (official capacity actions for prospective relief are not treated as actions against a state).

The distinction between the relief permitted under the doctrine of Ex parte Young and the relief barred by Edelman v. Jordan is the difference between prospective relief on one hand and retrospective relief on the other. Natural Resources Defense Council, 96 F.3d at 422 (federal court may award prospective[*16] injunctive relief that governs state official's future conduct, but not retroactive relief that requires payment of funds from state treasury).

Ex parte Young requires that the officer "must have some connection" with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party. 209 U.S. at 157.

Torrez has not stated in his complaint whether his action is brought against the defendants in their official or personal capacities. If Torrez has brought this action against the defendants in their official capacities, he is barred by the Eleventh Amendment from obtaining the money damages he seeks, although not from prospective injunctive relief.

b. Actions brought against officers in their personal capacity

[HN8] While official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent," see Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978), personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color[*17] of state law. Graham, 473 U.S. at 165. Thus, actions for damages brought against state officials in their personal capacity, seeking to impose personal liability for actions taken under color of state law, are not barred by the Eleventh Amendment. Id. n2 See also Hafer v. Melo, 502 U.S. 21, 30-31, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991); Ashker v. California Dept. of Corrections, 112 F.3d 392, 394-95 (9th Cir. 1997) (Eleventh Amendment does not bar federal claims seeking damages against a state official acting personally); Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999)(plaintiff can avoid Eleventh Amendment's shield and establish personal liability in a a 1983 action by showing that the official acted under color of state law in deprivation of a federal right). To establish personal liability in a a 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. Graham, 473 U.S. at 166.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n2 However, a public official is not subject to personal liability if he or she is entitled to qualified immunity. Anderson v. Creighton, 483 U.S. 635, 639, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*18]

      [HN9] An action is brought against a state official in his or her official capacity when it is asserted not against the official as an individual, but rather against the official's office. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 105 L. Ed. 2d 45 (1989). See also Graham, 473 U.S. at 166 (governmental entity is liable under a 1983 only when the entity itself is a "moving force" behind the deprivation). In Hafer, 502 U.S. at 26, the Supreme Court stated, "The phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." An action is brought against a state official in his or her individual capacity when it is asserted against the defendant as an individual. The fact that the state officer and the state have an indemnity arrangement is not relevant to the analysis. Ashker, 112 F.3d at 395.

    I am persuaded that this particular action is brought against the defendants in their individual, rather than their official, capacities. The allegations concern specific, individual[*19] decisions made and actions taken by the defendants under factual circumstances relevant only to Torrez. They do not assert claims against the offices the defendants occupy; if different individuals occupied the defendants' offices, their decisions could well have been different from those made by the defendants in this action. I recommend, therefore, that the defendants' motion for summary judgment on the basis of Eleventh Amendment immunity be denied.

    3. Qualified immunity

      [HN10] Public officials are entitled to qualified immunity from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief. American Fire, Theft & Collision Managers, Inc. v. Gillespie, 932 F.2d 816, 818 (9th Cir. 1991). Thus, the defendants' assertion of qualified immunity, even if meritorious, does not preclude Torrez from obtaining injunctive relief. It only precludes recovery of[*20] money damages from the defendants.

    In Saucier v. Katz, 533 U.S. 194, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001), the Supreme Court articulated the test for qualified immunity. [HN11] First, a qualified immunity analysis must begin with this threshold question: based upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right?

Id. at 201. If no constitutional right was violated, the court need not inquire further. Id. If, however, a constitutional violation occurred, the second inquiry is whether the right was clearly established. Id.

The inquiry into whether rights were clearly established should be conducted by looking at the application of the constitutional right in its particularized context. Anderson v. Creighton, 483 U.S. 635, 639, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987); Saucier, 533 U.S. at 201 (inquiry into whether a constitutional right was violated "must be undertaken in light of the specific context of the case, not as a broad general proposition"). The "contours of the right must be sufficiently clear that a reasonable official would understand that what[*21] he is doing violates that right." Alexander v. County of Los Angeles, 64 F.3d 1315, 1319 (9th Cir. 1995), citing Anderson, 483 U.S. at 640.

If violation of a clearly established constitutional right has been shown, the third inquiry is whether the officer could nevertheless have reasonably, but mistakenly believed that his or her conduct did not violate a clearly established constitutional right. Saucier, 533 U.S. at 206.

[HN12] A a 1983 claim for inadequate medical treatment under the Eighth and Fourteenth Amendments requires proof that the health care professional showed "deliberate indifference to" the inmate's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). A medical need is serious if the failure to treat the condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. at 104.

Deliberate indifference requires the inmate to show that the official knew of and disregarded a substantial risk of serious harm to his health or safety. Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994).[*22] Mere negligence is not sufficient to establish liability. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). As the Court said in Estelle: "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." 429 U.S. at 106.

A prison official is deliberately indifferent to a substantial risk of serious harm to inmates if that official is subjectively aware of the risk and does nothing to prevent the resulting harm. Farmer, 511 U.S. at 828-29; Jeffers v. Gomez, 267 F.3d 895, 913 (9th Cir. 2001). Deliberate indifference requires that an official "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer 511 U.S. at 837; Jeffers, 267 F.3d at 914 (prison official violates the Eighth Amendment only when he

or she "knows of and disregards an[*23] excessive risk to inmate health or safety.")

Defendants assert that what is at issue in this case is a "mere difference of opinion as to which medically acceptable course of treatment should be followed," citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). They argue that deliberate indifference is not shown if the defendant's actions are based on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). I disagree with this argument as applied to these facts.

The essence of Torrez's claim is that over a period of some years, it should have become obvious to any reasonable medical practitioner that the course of treatment chosen by the defendants was ineffective. There is sufficient evidence from which a jury could find in Torrez's favor on this claim. Torrez complained to the defendants that the hernia belt offered him no relief. He complained that he was in frequent and increasing pain. He complained that he had difficulty walking and climbing stairs. The defendants noted on Torrez's chart that the hernia had grown[*24] larger, rather than being reduced by the treatment they had offered, and that Torrez had difficulty walking. Torrez reported having difficulty reducing the hernia on two occasions.

A reasonable jury could also find the requisite element of intent, because jurors could infer that over a period of several years, the defendants persistently discounted Torrez's constant complaints of pain, refused to authorize a simple and routine surgery which would have eliminated the problem, and even changed their minds about accommodating his requests for a lower bunk restriction and denied a request for a low tier assignment.

[HN13] The final inquiry under Saucier is whether a reasonable medical officer would have understood that his or her decision was impermissible under the Eighth Amendment. Although defendants again assert that this case involves, at most, a difference of opinion about alternative, but equally acceptable, courses of treatment, I conclude that Torrez has presented a triable issue on this element as well. Viewing the evidence in Torrez's favor, the information presented to the defendants was that 1) the hernia belt originally prescribed was not working, 2) Torrez was in nearly constant[*25] and increasing pain, triggered by such inconsequential events as sneezing, 3) the pain radiated into his leg and caused him difficulty with walking and climbing stairs, 4) he was required to push the hernia back into place several times a day, and 5) the hernia had grown larger over time. Given this information, it cannot be said as a matter of law that a reasonable medical officer would still have persisted in his or her opinion that the hernia was medically insignificant, that the treatment being offered was sufficient, and that surgical intervention should not even be considered.

I recommend that defendants' motion for summary judgment based upon qualified immunity be denied.

4. Failure to state a claim

For the reasons already discussed, defendants are not entitled to judgment that Torrez has failed to state a claim for violation of his Eighth Amendment rights. Torrez has presented a cognizable legal theory and sufficient facts under to constitute a claim under that theory. See Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Conclusion

I recommend that defendants' motion for summary judgment (doc. # 31) be DENIED.

[*26] Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due June 18, 2004. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due July 2, 2004, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 4 day of June 2004.

Dennis J. Hubel

United States Magistrate Judge