UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


KENNETH NICHOLS                    :
                                   :           PRISONER
        v.                         : Case No. 3:03CV879 (JBA)
                                   :
DR. EDWARD PESANTI, et al.[1]      :


RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Kenneth Nichols ("Nichols"), currently confined at the Garner Correctional Institution in Newtown, Connecticut, commenced this civil rights action pursuant to 28 U.S.C. § 1915. Nichols alleges that, while he was confined at Northern Correctional Institution in Somers, Connecticut, defendants were deliberately indifferent to his serious medical needs. Defendants have filed a motion for summary judgment on several grounds. For the reasons that follow, defendants' motion is granted.

I.   Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a

---

[1]The named defendants are Dr. Edward Pesanti, Dr. Omprakash Pillai, Dr. Carson Wright, Patricia Wollenhaupt and Pamela Shea. All defendants are named in their individual capacities only.

matter of law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
256 (1986), <u>White v. ABCO Engineering Corp.</u>, 221 F.3d 293, 300
(2d Cir. 2000), Fed. R. Civ. P. 56(c).  A court must grant
summary judgment "'if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with
affidavits, if any, show that there is no genuine issue as to any
material fact . . . .'"  <u>Miner v. Glen Falls</u>, 999 F.2d 655, 661
(2d Cir. 1993) (citation omitted).  A dispute regarding a
material fact is genuine "'if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.'"
<u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir.
1992) (quoting <u>Anderson</u>, 477 U.S. at 248), <u>cert. denied</u>, 506 U.S.
965 (1992).  After discovery, if the nonmoving party "has failed
to make a sufficient showing on an essential element of [its]
case with respect to which [it] has the burden of proof," then
summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477
U.S. 317, 323 (1986).

When a motion for summary judgment is supported by
documentary evidence and sworn affidavits, the nonmoving party
must present "significant probative evidence tending to support
the complaint."  <u>Anderson</u>, 477 U.S. at 256 (quoting <u>First Nat.
Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968)).  A
nonmoving party may not rely "on mere speculation or conjecture

2

as to the true nature of the facts to overcome a motion for summary judgment." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 12 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." <u>Aldrich</u>, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991), <u>cert. denied</u>, 502 U.S. 849 (1991); <u>see also</u> <u>Suburban Propane v. Proctor Gas, Inc.</u>, 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. <u>See</u> <u>Securities & Exchange Comm'n v. Research Automation Corp.</u>, 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995); <u>see also</u> <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible). A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment. <u>See</u> <u>Lujan v. National</u>

<u>Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990).

II.  <u>Facts</u>[2]

    Nichols was first incarcerated in September 1994.  He was released from custody in October 1999 and reincarcerated in August 2000.  From September 2000 through March 2002, Nichols was confined at Northern Correctional Institution in Somers, Connecticut.

    On April 6, 2001, Nichols was seen by a nurse in the medical department for ulcers in his mouth.  At this time, Nichols reported that, for the past ten years, he had a hernia in the left groin area.  After examining him, the nurse noted that Nichols could walk and get in and out of a chair without apparent discomfort and that the hernia did not descend upon repeated coughs.  She concluded that the hernia was not incarcerated and referred Nichols to Dr. Pillai for examination.

    Nichols complained of an inguinal hernia, caused by the abnormal passage of an organ, here the intestine, through the inguinal canal.  For Nichols, this resulted in a bulge in the scrotum.  If the bulge can be returned to its normal location by

---

[2]The facts are taken from the evidence referenced in defendants' Local Rule 56(a)1 Statement (designated under the former Local Rule 9(c)(1)) [doc. #22-1].  Despite specific notice from the court, (<u>see</u> doc. #23), Nichols has not responded to defendants' motion.  Thus, defendants' facts are deemed admitted, to the extent supported by the accompanying evidence.  <u>See</u> D. Conn. L. Civ. R. 56(a)1.

manipulation, the hernia is considered reducible.   A reducible inguinal hernia is quite common.   It does not impact activities of daily living and is not considered a medical emergency.   If the bulge cannot be returned to its normal location, the hernia is considered incarcerated.   An incarcerated hernia is considered a medical emergency.   Nichols did not suffer from an incarcerated hernia at any time.

Dr. Pillai examined Nichols on April 10, 2001.   Nichols informed the doctor that he was experiencing occasional constipation as a result of the hernia.   He did not complain of pain at this time.   Dr. Pillai determined that the hernia was reducible and recommended reassurance, a truss to prevent the hernia from increasing, colace to relieve any diarrhea and re-evaluation in six months.

Dr. Wright examined Nichols on June 25, 2001.   Nichols exhibited no signs of the hernia and reported experiencing no pain.   He said that he experienced pain only occasionally.   Dr. Wright noted that Nichols was not wearing any supportive device and, upon examination, found no lesion or bulge.   Dr. Wright advised Nichols to avoid lifting weights.

Dr. Wright again examined Nichols on July 14, 2001.   Nichols did not complain of any hernia-related pain or problems.   Dr. Wright found no evidence of lesion upon examination.   Although

Nichols sought medical care many times between July 2001 and March 2002, when he was transferred from Northern Correctional Institution, at no time did he seek treatment for or complain of pain from the hernia.

The next reference to the hernia in Nichols' medical records is on April 18, 2002. Nichols complained, for the first time, that the truss did not fit properly. The doctor submitted a request for surgery to the Utilization Review Committee. The request was denied initially, then amended to authorize a surgical consultation. The outside surgeon approved Nichols for surgery and noted that the hernia still was reducible. The surgery was performed on July 9, 2002.

III. Discussion

Nichols alleges that defendants were deliberately indifferent to his serious medical need. Defendants move for summary judgment on the grounds that Nichols fails to state a claim for deliberate indifference to his serious medical need and has not alleged facts demonstrating the personal involvement of defendants Pesanti, Wollenhaupt and Shea in his claims. Nichols has not responded to the motion for summary judgment despite specific notice from the court.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in

violation of the Eighth Amendment.  See Estelle v. Gamble, 429
U.S. 97, 104 (1976).  To prevail on such a claim, however,
Nichols must allege "acts or omissions sufficiently harmful to
evidence deliberate indifference" to his serious medical need.
Id. at 106; see also McKenna v. Wright, 386 F.3d 432, 436-37 (2d
Cir. 2004) ("a prisoner claiming a denial of adequate medical
care in violation of the Eighth Amendment must allege and
ultimately prove that prison officials acted with deliberate
indifference to a serious medical need.").  Nichols therefore
must show intent to either deny or unreasonably delay access to
needed medical care or the wanton infliction of unnecessary pain
by prison personnel.  See Gamble, 429 U.S. at 104-05.

Mere negligence will not support a section 1983 claim.
Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).  "Medical
malpractice does not become a constitutional violation merely
because the victim is a prisoner."  Gamble, 429 U.S. at 106.
Rather, "[d]eliberate indifference is 'a state of mind that is
the equivalent of criminal recklessness.'" Hernandez, 341 F.3d at
144 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir.
1996)).

Inmates do not have a constitutional right to the treatment
of their choice.  See Dean v. Coughlin, 804 F.2d 207, 215 (2d
Cir. 1986).  Thus, mere disagreement with prison officials about

7

what constitutes appropriate care does not state a claim
cognizable under the Eighth Amendment.  See Ross v. Kelly, 784 F.
Supp. 35, 44 (W.D.N.Y. 1992), aff'd, 970 F.2d 896 (2d Cir. 1992),
cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the
deliberate indifference standard.  See Hathaway, 37 F.3d at 66
(2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S.
1154 (1995).  The alleged deprivation must be "sufficiently
serious" in objective terms.  Wilson v. Seiter, 501 U.S. 294, 298
(1991).  The Second Circuit has identified several factors that
are relevant to the inquiry into the seriousness of a medical
condition:  "'[t]he existence of an injury that a reasonable
doctor or patient would find important and worthy of comment or
treatment; the presence of a medical condition that significantly
affects an individual's daily activities; or the existence of
chronic and substantial pain.'"  Chance v. Armstrong, 143 F.3d
698, 702 (2d. Cir. 1998) (citation omitted).  In addition, where
the denial of treatment causes plaintiff to suffer a permanent
loss or life-long handicap, the medical need is considered
serious.  See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir.
2000).

In addition to demonstrating a serious medical need to
satisfy the objective component of the deliberate indifference

8

standard, Nichols also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Defendants first argue that Nichols' hernia does not constitute a serious medical need. They provide the affidavit of Dr. Edward Blanchette, Director of Clinical and Professional Services for the Connecticut Department of Correction. Dr. Blanchette notes that Nichols only complained of pain from his inguinal hernia once during the eighteen months he was confined at Northern Correctional Institution. Although he complained of pain on April 6, 2001, the nurse noted that Nichols displayed no objective signs of pain. When he was examined four days later and the following month, Nichols denied experiencing any pain from the inguinal hernia. Dr. Blachette concludes from the medical records that Nichols' complaints of pain are not credible.

9

Dr. Blanchette also offers an opinion regarding the medical care afforded Nichols.  After reviewing Nichols' medical records, Dr. Blanchette states that Nichols received appropriate medical treatment at Northern Correctional Institution.  The records show that Nichols complained of pain from the hernia only once.  At that time, he was prescribed a truss and scheduled for re-examination in six months or if his condition changed.  One month later, another doctor examined Nichols and noted that he was not wearing the truss.  Nichols did not indicate that the truss did not fit properly until after he had been transferred to MacDougall Correctional Institution.  In addition, during the remainder of his confinement at Northern Correctional Institution, Nichols did not complain of pain from or seek treatment for the hernia.  He did obtain medical treatment on various occasions for conditions unrelated to the hernia.  Dr. Blanchette states that a reducible inguinal hernia is not a medical emergency.  Patients often go years without surgery and experience no ill effects.  Nichols informed medical staff that he had his inguinal hernia for ten years.  Surgery to repair a reducible inguinal hernia is elective, especially where, as here, the hernia does not impact any activities of daily living.

Courts considering this issue have found that delay in providing surgery for a reducible inguinal hernia is not

10

deliberate indifference to a serious medical need. One court determined that an "inguinal hernia [is] not objectively a 'serious' enough condition to satisfy the objective prong" of the deliberate indifference test. Arroyo v. City of New York, No. 99 Civ.1458(JSM), 2003 WL 22211500, at *2 (S.D.N.Y. Sept. 25, 2003). The court determined that an inguinal hernia was not a condition of urgency, possibly producing death, degeneration or extreme pain as required to be a serious medical need. See id. In addition, courts have held that conservative treatment or delay in scheduling elective surgery does not rise to the level of deliberate indifference. See id. at *3 (holding that plaintiff received medical treatment consistent with the diagnosis and alleged only negligence); Iniquez v. Chief Medical Officer, No. C 02-3294 MMC, 2002 WL 31750217, at *2 (N.D. Cal. Dec. 3, 2002) (holding that although plaintiff was not provided elective surgery to correct inguinal hernia, defendants attempted to schedule surgery and provided a truss, medication and restrictions on lifting; thus they were not deliberately indifferent).

Nichols has provided no medical testimony or any other evidence to rebut defendants' evidence. The only indication that plaintiff suffered pain from the inguinal hernia is contained in his complaint. Allegations in a complaint, however, are

insufficient to oppose a properly supported motion for summary judgment. See, e.g., Goenaga, 51 F.3d at 18 (party opposing summary judgment may not rely on "mere allegations or denials" contained in his pleadings); Douglas v. Hill, No. 95-6497, 1996 WL 716278, at *8 (E.D. Pa. Dec. 6, 1996) (holding that court cannot consider as evidence in opposition to a motion for summary judgment alleged statements and "bald contentions" contained in amended complaint that defendants were deliberately indifferent to plaintiff's inguinal hernia).

The court concludes that the defendants' undisputed evidence, including the affidavit of Dr. Blanchette and the accompanying medical records, shows that defendants are entitled to judgment as a matter of law on plaintiff's deliberate indifference claim.

IV.  Conclusion

Accordingly, defendants' motion for summary judgment [doc. #22] is **GRANTED.**  The Clerk is directed to enter judgment accordingly and close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut, this 11th day of February, 2005.**

12